Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 4953 | **DATE** | 11/12/2003 |
| **CASE TITLE** | Lewis vs. Lucent Technologies | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant Lucent Technologies, Inc.'s motion for summary judgment is granted in part and denied in part. It is granted as to Plaintiff's Title VII claim. Defendant's motion to strike portions of the affidavit of plaintiff Debra Lewis (R.45-1) is denied as moot.

*[signature: Amy J. St. E.]*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | NOV 1 3 2003 | |
| | Notified counsel by telephone. | | date docketed | 54 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| TH ✓ | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

DEBRA A. LEWIS, )
)
    Plaintiff, )
) No. 02 C 4953
v. )
)
LUCENT TECHNOLOGIES, INC., )
)
    Defendant. )

DOCKETED

NOV 1 3 2003

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Judge:

Plaintiff Debra A. Lewis ("Lewis") brought this employment discrimination action against Lucent Technologies, Inc. ("Lucent") alleging that Lucent discriminated against her on the basis of age in violation of the Age Discrimination Act of 1967, 29 U.S.C. §§ 621-34, *et seq.* ("ADEA"), and on the basis of race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"). Lucent has moved for summary judgment on both counts. For the following reasons, Lucent's motion is granted in part and denied in part.

## SUMMARY JUDGMENT STANDARDS

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986)). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). Summary judgment is inappropriate "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S. Ct. at 2505. The Court "considers the evidentiary record in the light most favorable to the non-moving party, and draws all reasonable inferences in his favor." *Lesch v. Crown Cork & Seal Co.,* 282 F .3d 467, 471 (7th Cir. 2002).

## UNDISPUTED FACTS

Lucent employed Lewis between September 18, 2000 and February 19, 2001 as a Member of Technical Staff 1 ("MTS 1") in Lucent's Software Configuration Management Group ("CMG"). (R. 34-3, Def.'s Rule 56.1(a)(3) Statement of Material Facts ("Def.'s Statement") ¶¶ 2, 4, 7; R. 42, Pl.'s Resp. to Def.'s Statement of Material Facts ("Pl.'s Resp.") ¶¶ 2, 4, 7.) Lewis is an African American female who was 43 years old when Lucent hired her. (R. 43-1, Pl.'s Aff. ¶ 1.)

### I.   Nancy Holforty

Nancy Holforty ("Holforty"), a technical manager of the CMG, supervised Lewis between September 18, 2000 and mid-January 2001, when Lucent split Holforty's group in half. (R. 34-3. Def.'s Statement ¶¶ 6-7; R. 42, Pl.'s Resp. ¶¶ 6-7.) Leon Peeters, a technical manager brought into the CMG from another department, supervised Lewis from mid-January 2001 until February 19, 2001, when Peeters terminated Lewis. (R. 34-3. Def.'s Statement ¶ 7; R. 42, Pl.'s Resp. ¶ 7; R. 43-1, Pl.'s Statement of Add'l Facts ¶ 19; R. 47-1, Def.'s Reply Statement and Resp. to Pl.'s Add'l Facts ("Def.'s Resp. to Add'l Facts") ¶ 19.)

Holforty gave Lewis her first assignment, which involved developing a test management system ("TMS") database to provide a repository for one of the testing teams in the CMG. (R. 34-3. Def.'s Statement ¶ 9; R. 42, Pl.'s Resp. ¶ 9.) This assignment required Lewis to create naming conventions for the database. (*Id.* at ¶ 10.) Holforty instructed Lewis to consult with the testing team and others as necessary to complete the assignment. (*Id.* at 12.)

At the end of fiscal year 2000, Holforty gave Lewis an annual performance appraisal review ("PAR"). (R. 34-3. Def.'s Statement ¶ 18; R. 42, Pl.'s Resp. ¶ 18.) Because the PAR was based on fiscal year 2000, which ended September 30, 2000, Holforty based her review solely on information available as of October 1, 2000. (R. 34-3. Def.'s Statement ¶ 19; R. 42, Pl.'s Resp. ¶ 19.) As of October 1, 2000, Lewis had only worked at Lucent for approximately two weeks. (R. 34-3. Def.'s Statement ¶ 20; R. 42, Pl.'s Resp. ¶ 20.) Holforty categorized Lewis as an "adequate" performer and rated her as "effective" on the performance appraisal matrix. (R. 34-3. Def.'s Statement ¶ 21; R. 42, Pl.'s Resp. ¶ 21.) Department head Lynn Paulter had a standard policy to categorize all new hires as "adequate" performers until the next review period. (R. 34-3. Def.'s Statement ¶ 24; R. 42, Pl.'s Resp. ¶ 24.) Holforty noted on the appraisal form that Lewis "has started well but has only been with the company 2 weeks at the close of this performance period. It is too early to have a complete assessment so she will be slotted as an adequate performer at this time." (R. 34-3. Def.'s Statement ¶ 22; R. 42, Pl.'s Resp. ¶ 22.) On November 28, 2000, Holforty discussed the PAR with Lewis. (R. 34-3. Def.'s Statement ¶ 25; R. 42, Pl.'s Resp. ¶ 25.)

During the time she supervised Lewis, Holforty assigned Brian Stiner ("Stiner"), another engineer in the group, to act as Lewis's mentor. (R. 43-1, Pl.'s Statement of Add'l Facts ¶ 9; R.

47-1, "Def.'s Resp. to Add'l Facts" ¶ 9.) Stiner is a white male. (R. 43-1, Pl.'s Statement of Add'l Facts ¶ 10; R. 47-1, "Def.'s Resp. to Add'l Facts" ¶ 10.)

**II.    Leon Peeters**

In mid-January 2001, Lucent split Holforty's group in half and transferred Lewis and several other employees to another group supervised by Leon Peeters ("Peeters"). (R. 34-3. Def.'s Statement ¶ 29; R. 42, Pl.'s Resp. ¶ 29.) Peeters met with Lewis individually for the first time on or about January 23, 2001. (R. 34-3. Def.'s Statement ¶ 32; R. 42, Pl.'s Resp. ¶ 32.)

Peeters met with Holforty to discuss Lewis's performance. (R. 34-3. Def.'s Statement ¶ 38.) Peeters also consulted Irene Morgan, another technical manager in a related department who had worked with Lewis, regarding Lewis's performance. (R. 34-3. Def.'s Statement ¶ 43; R. 42, Pl.'s Resp. ¶ 43.) Morgan indicated that she did not want Lewis to transfer into her group. (R. 34-3. Def.'s Statement ¶ 43; R. 42, Pl.'s Resp. ¶ 43.) Two days later, Paulter gave Peeters approval to terminate Lewis. (R. 34-3. Def.'s Statement ¶ 45; R. 42, Pl.'s Resp. ¶ 45.) In mid-February 2001, Peeters held a meeting with Lewis and informed her that Lucent was terminating her. (R. 34-3. Def.'s Statement ¶ 46.) Peeters asked Lewis to clear her desk and leave the premises immediately. (R. 34-3. Def.'s Statement ¶ 51; R. 42, Pl.'s Resp. ¶ 51.)

On July 12, 2002, Lewis filed her complaint with this Court. (R.1-1, Compl.)

## ANALYSIS

The ADEA makes it unlawful "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). To establish an ADEA violation, a plaintiff must present evidence demonstrating that age was a "determining factor" in an adverse employment action. *Smith v. Great Am. Rests.,*

*Inc.,* 969 F.2d 430, 434 (7th Cir. 1992).

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

Lewis may show evidence of discrimination under the ADEA and Title VII either by means of direct evidence or the indirect burden-shifting method of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). *See Michas v. Health Cost Controls of Illinois, Inc.,* 209 F.3d 687, 692-693 (7th Cir. 2000).

Under the *McDonnell Douglas* burden-shifting method, a plaintiff must first establish a *prima facie* case of discrimination. To make a *prima facie* case of discrimination, the plaintiff must show that (1) she is a member of a protected class, (2) she reasonably performed to her employer's expectations, (3) she was subject to an adverse employment action, and (4) she was treated differently from similarly situated employees who were outside of her protected group. *See McDonnell Douglas,* 411 U.S. at 802, 93 S. Ct. 1817.

Once the employee makes a *prima facie* showing of discrimination, the employer may come forward with evidence of a "legitimate, nondiscriminatory reason" for its employment decision. If the employer articulates a non-discriminatory reason for its conduct, the employee must prove that the legitimate reason proffered by the employer was merely a pretext for discrimination, and that discrimination was the real reason for the employment decision. *Baron v. City of Highland Park,* 195 F.3d 333, 338-39 (7th Cir. 1999).

## I. A Reasonable Jury Could Find That Lucent Discriminated Against Lewis on the Basis of Her Age

To survive a motion for summary judgment, Lewis must present sufficient evidence to allow a reasonable jury to conclude that but for her age, Lucent would not have fired her. *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1089 (7th Cir. 2000). Lewis has presented direct evidence of age discrimination.

Lewis asserts that Peeters repeatedly made derogatory comments to her regarding her age at and around the time he terminated her. Specifically, Lewis alleges that during the meeting in which Peeters terminated her, Peeters told her that "[s]omeone at your age should have a much more broader base. Someone at your age should have had their career well developed before now." (R. 43-1, Pl.'s Statement of Add'l Facts ¶ 25.) Lewis further alleges that during her January 23, 2001 introductory meeting with Peeters, he said "[w]ell it seems to me Debra that you waited late in life to decide on what career goals you wanted to set for yourself." (R. 43-1, Pl.'s Statement of Add'l Facts ¶ 21.) At the same meeting, Peeters also allegedly told Lewis that "[s]omeone at your age should be more developed now coming into this environment than what you are. Most of our employees come in much younger and are developed." (R. 43-1, Pl.'s Statement of Add'l Facts ¶ 22.) Lewis cites her own deposition testimony to support these allegations.

### A. Lewis's Deposition Testimony is Sufficient to Defeat Summary Judgment

At the outset, the Court addresses Lucent's contention that Lewis's assertions about Peeters's alleged comments are "conclusory, self-serving, and unsupported by the record citations other than plaintiff's own unsubstantiated statements." (R. 47-1, "Def.'s Resp. to Add'l

6

Facts" ¶ 21-22, 25.) Lucent argues that Lewis's deposition testimony, without more, is insufficient to defeat summary judgment as to the issue of whether Peeters made the derogatory comments. The Court disagrees.

"[S]ummary judgment cannot be used to resolve swearing contests between litigants." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). "Self-serving" deposition testimony may be sufficient to defeat summary judgment "[p]rovided that the evidence meets the usual requirements for evidence presented on summary judgment – including the requirements that it be based on personal knowledge and that it set forth specific facts showing that there is a genuine issue for trial." *Payne*, 337 F.3d at 773.

Lewis's deposition testimony satisfies both requirements. First, it is undisputed that Lewis was present at both meetings during which Peeters allegedly made the derogatory comments. Lewis, therefore, has personal knowledge of the facts to which she testified at her deposition. Second, her testimony is based on specific facts, namely, Peeter's alleged derogatory comments. Lewis does not give conclusory, speculative testimony that "I was fired because of my age." *Cf. Cliff v. Board of Sch. Comm'rs of Indianapolis*, 42 F.3d 403, 412 (7th Cir. 1994). Nor does she seek to rely on her own subjective belief that facially neutral comments indicated an age bias. *Cf. Mills v. First Fed. Sav. & Loan Assoc. of Belvidere*, 83 F.3d 833, 841-42 (7th Cir. 1996) (employee's self-serving affidavit that "[my supervisor] mentioned something about management's concern that we may not be able to keep up with the regulations. I took this to mean it was because of our age" could not defeat summary judgment because the statement merely evidenced plaintiff's subjective belief that she was terminated due to her age.)

Rule 56 specifically contemplates that parties may submit deposition testimony as

7

evidence for purposes of determining whether a genuine issue of material fact exists. Fed. R. Civ. P. 56(c). As the Seventh Circuit recently noted, *most* affidavits and deposition testimony submitted for purposes of defeating summary judgment are "self-serving." *Payne*, 337 F.3d at 772. There is nothing inherently more self-serving about Lewis's deposition than Peeters's. Because Lewis's deposition testimony satisfies the requirements of Rule 56, the Court will not make credibility determinations by resolving the conflict between Lewis's and Peeters's deposition testimony on summary judgment.

### B. Peeters's Alleged Comments Are Direct Evidence of Discrimination

Lewis asserts that Peeters's allegedly derogatory comments constitute direct evidence of age discrimination. Lucent contends that Peeters never made those comments, and that in any event, the comments do not constitute direct evidence of age discrimination.

Derogatory comments may constitute direct evidence of discrimination if they are made around the time of and in reference to the alleged adverse employment action. *Gorence v. Eagle Food Ctrs., Inc.*, 242 F.3d 759, 762 (7th Cir. 2001). Thus, for allegedly derogatory remarks to "qualify as direct evidence of discrimination, the plaintiff must show that the remarks were related to the employment decision in question." *Fuka v. Thomson Consumer Elecs.*, 82 F.3d 1397, 1403 (7th Cir.1996) (citation omitted). The Seventh Circuit has "caution[ed] against overread[ing] language in a number of our cases to the effect that 'stray remarks' of a derogatory character are not evidence of actionable discrimination," where the decisionmaker expressed such animus around the time of and in reference to the adverse employment action. *Hunt v. City of Markham, Ill.*, 219 F.3d 649, 652 (7th Cir. 2000).

Lewis has set forth evidence that Peeters's directed his derogatory comments at her and

8

made them contemporaneous with the time of her termination. Peeters allegedly made the comments at the same meeting during which he terminated Lewis. Moreover, Peeters's alleged comments relate to the employment decision. By allegedly stating that "[s]omeone at your age should have had their career well developed before now," Peters linked Lewis's age to her performance -- the very reason he gave for firing her.[1]

This is sufficient direct evidence to create a triable issue of material fact regarding age discrimination.[2] Summary judgment is therefore inappropriate as to Lewis's age discrimination claim.

## II. Lewis Cannot Show That Lucent Discriminated Against Her on the Basis of Her Race

Lewis presents no direct evidence of racial discrimination, and must therefore proceed under the indirect burden-shifting method of *McDonnell Douglas*.

### A. Stiner's Comments Are Not Direct Evidence of Racial Discrimination

Lewis bases her racial discrimination claim on comments allegedly made by her mentor and co-worker Brian Stiner. Lewis alleges that she overheard Stiner tell another co-worker that

---

[1] Lucent's reliance on *Robin v. Espo Engineering Corp.*, 200 F.3d 1081 (7th Cir. 2000) is misplaced. In that case, the defendant allegedly referred to plaintiff as an "old S.O.B." who was "getting too old." The court held that these statements did not constitute direct evidence of age discrimination because they lacked temporal proximity to plaintiff's discharge in that they were made two years before his discharge. *Robin*, 200 F.3d at 1089. Moreover, it was undisputed that those statements were made in the context of random office banter. *Id.*

[2] The Court need not engage in a *McDonnell Douglas* analysis because Lewis has set forth direct evidence of age discrimination. *See Phelan v. City of Chicago*, 2003 WL 22389871 at *6 (7th Cir. Oct. 21, 2003)(noting that the *McDonnell Douglas* is not needed where plaintiff presents direct evidence of discrimination)(citations omitted).

"I'm not going to show her black a** sh**. She came in here as an MTS. She's going to learn it the hard way." (R. 43-1, Pl.'s Statement of Add'l Facts ¶ 11.) Plaintiff further alleges that, in reference to her being hired, Stiner told another employee that "I see you got your quota." (R. 43-1, Pl.'s Statement of Add'l Facts ¶ 12.)

Stiner's alleged comments do not constitute direct evidence of racial discrimination. It is undisputed that Stiner is merely a co-worker. Lewis has presented no evidence that Stiner was a decision-maker directly responsible for her termination, or that he influenced Peeters's decision to terminate her. Although Stiner's alleged comments demonstrate reprehensible bigotry, they cannot form the basis of a racial discrimination claim because bigotry *per se* is not actionable. There must be a real link between the bigotry and an adverse employment action. *Miller v. American Family Mut. Ins. Co.*, 203 F.3d 997 (7th Cir. 2000).

It is undisputed that Peeters, the decision-maker, never made any comments to Lewis regarding her race or gave Lewis any reason to believe that he was terminating her on the basis of her race. (R. 34-3. Def.'s Statement ¶ 52; R. 42, Pl.'s Resp. ¶ 52.) Lewis has presented no direct evidence of racial discrimination.

### B.     Lewis Cannot Identify Non-Black Similarly Situated Employees Who Were Treated More Favorably Than Her

Lewis fares no better under the indirect method of *McDonnell Douglas*. To establish her *prima facie* case of racial discrimination Lewis must show, *inter alia*, that non-black similarly situated employees were treated more favorably than her. *See McDonnell Douglas*, 411 U.S. at 802, 93 S. Ct. 1817.

Lucent argues that Lewis failed to identify any similarly situated employees outside of her

10

protected class who were treated more favorably than her. Lewis responds with two arguments. First, she contends that Lucent hired Greg Fixen, a white male, into her group the day before Lucent terminated her. Second, Lewis contends that several employees in her group were provided with work assignments whereas Lewis received no new assignments despite her repeated requests. This, Lewis contends, bears directly on her low productivity, which is Lucent's proffered reason for terminating her.

Lewis failed to establish that either Greg Fixen or the other unnamed employees in her group were "similarly situated." A plaintiff may demonstrate that another employee is "similarly situated" to her by "show[ing] that there is someone who is directly comparable to her in all material respects." *Peele v. Country Mutual Ins. Co.*, 288 F.3d 319, 330 (7th Cir. 2002). Further, "in disciplinary cases – in which a plaintiff claims that [she] was disciplined by [her] employer more harshly than a similarly situated employee based on some prohibited reason – a plaintiff must show that [she] is similarly situated with respect to performance, qualifications, and conduct." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002).

With respect to Fixen, Lewis provides no detail as to his qualifications, performance, or conduct. She does not even allege that he reported to the same supervisor. Lewis simply states that "[a]s for the final [*McDonnell Douglas*] requirement, Plaintiff testified that Greg Fixen, a white male employee under the age of forty, was hired into her group the day before she was terminated." (R. 41, Pl.'s Mem. in Opp. to Summ. J. at 9.) Lewis makes no attempt to establish that Fixen is in fact similarly situated to her.

With respect to the unnamed "other employees" Lewis provides even less information. She fails to provide names, and does not mention their performance or conduct at all. Instead,

11

she argues that the fact that these employees were given assignments whereas she was not "undercuts what Mr. Peeters admitted was the only reason he allegedly articulated at the termination meeting – Plaintiff's low productivity." (R. 41, Pl.'s Mem. in Opp. to Summ. J. at 10.) While such evidence may be relevant in a pretext analysis, it hardly establishes that similarly situated employees were treated more favorably than her.

Because Lewis cannot identify similarly situated non-black employees who were treated more favorably than her, she cannot establish her *prima facie* case. Accordingly, the Court need not analyze whether Lucent's stated nondiscriminatory reason for terminating Lewis is a pretext. *See Peele v. Country Mutual Ins. Co.*, 288 F.3d 319, 327 (7th Cir. 2002) ("If a plaintiff is unable to establish a *prima facie* case of employment discrimination under *McDonnell Douglas*, an employer may not be subject to a pretext inquiry."). No reasonable jury could find based on these facts that Lucent discriminated against Lewis on the basis of her race.

## CONCLUSION

Lewis has set forth sufficient evidence creating a triable issue of fact as to whether Lucent discriminated against her on the basis of her age, but has failed to present a *prima facie* case of racial discrimination. Accordingly, Lucent's motion for summary judgment is denied as to Lewis's ADEA claim and granted as to her Title VII claim.

Dated: November 12, 2003                    ENTERED

                                                  AMY J. ST. EVE
                                                  United States District Court Judge